COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Humphreys and Haley
Argued at Salem, Virginia


LINDA ANNE BROWN
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 3168-06-3                      JUDGE ROBERT P. FRANK
                                                        MARCH 11, 2008
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                              Thomas H. Wood, Judge

            Tate C. Love (Black, Noland & Read, P.L.C., on brief), for
            appellant.

            Karen Misbach, Assistant Attorney General II (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Linda Anne Brown, appellant, was convicted, in a bench trial, of conspiring to distribute

methamphetamine, in violation of Code § 18.2-256.  On appeal, she contends the trial court erred in

finding the evidence sufficient to convict.  For the reasons stated, we affirm.

                                        BACKGROUND

        On April 5, 2004, at around noon, Crystal Claytor arrived at appellant's home.  Claytor was

meeting Holly Sprouse, who had arrived before her and was seated on the floor beside appellant's

recliner.  Claytor noticed that Sprouse was writing on a manila envelope.  In the presence of both

Claytor and appellant, Sprouse wrote "two ounces" and "$3500" on the envelope,[1] as well as the

name "Gator."  Appellant saw Sprouse put two ounces of methamphetamine and cash into the

─────────────────────
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] The manila envelope had the following inscription, "3500 cash and 2 oz. (1) 28.2, (2)
27.8, 943-5047, Gator."

envelope, then fold and tape it closed. Sprouse handed the envelope to appellant without explanation. Appellant accepted the envelope, tucked it into the recliner beside her, and said, "This is in my hands now. Someone will have to kill me first before they get their hands on this. It's safe with me."

Claytor and Sprouse left with one ounce of methamphetamine and drove to Colonial Mall in Augusta County. Police, acting on a tip from a confidential informant, stopped Sprouse's car when she and Claytor arrived at the mall. A search of the car revealed $363 in U.S. currency and various "stashes" of methamphetamine located inside the vehicle.

Deputy Jonathan Sholes of the Augusta County sheriff's office obtained an arrest warrant for appellant and, with other officers, went to appellant's house to execute the warrant that same evening. Finding appellant at home, Sholes told her he had information regarding the envelope Sprouse had left with her. Appellant retrieved the envelope from a dresser drawer and gave it to the deputy, but denied any knowledge of its contents. The envelope contained the two ounces of methamphetamine[2] and $3,500 as described by Claytor.

Deputy Sholes testified at trial that the 53.71 grams of methamphetamine found in the envelope was inconsistent with personal use.

Appellant testified and denied knowing the contents of the envelope. The trial court found appellant's testimony unworthy of belief. The court determined that appellant knew methamphetamine was in the envelope and found her guilty of conspiracy to distribute.

This appeal follows.

ANALYSIS

Appellant's sufficiency argument has two components: (1) the evidence does not support the trial court's finding that appellant was aware that the manila envelope contained

---

[2] The drug analysis indicated 53.71 grams of methamphetamine.

methamphetamine; and (2) no evidence supports a finding that there was an agreement between appellant and Sprouse to distribute the drugs.

When faced with a challenge to the sufficiency of the evidence, we "'presume the judgment of the trial court to be correct'" and reverse only if the trial court's decision is "'plainly wrong or without evidence'" to support it. Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)). Put another way, a reviewing court does not "'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original) (quoting Woodby v. INS, 385 U.S. 276, 282 (1966)). We must instead ask whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (emphasis in original) (quoting Jackson, 443 U.S. at 319). "'This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Id. at 257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319).

The evidence clearly supports the trial court's finding that appellant was aware of the contents of the envelope. Claytor testified appellant saw Sprouse put the methamphetamine inside the envelope.

"Conspiracy is defined as 'an agreement between two or more persons by some concerted action to commit an offense.'" Feigley v. Commonwealth, 16 Va. App. 717, 722, 432 S.E.2d 520, 524 (1993) (quoting Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982)). The crime is "complete when the parties agree to commit an offense," and "[n]o overt act in furtherance of the underlying crime is necessary." Gray v. Commonwealth, 260 Va. 675, 680, 537 S.E.2d 862, 865 (2000). Although no overt act is necessary to establish a conspiracy,

the parties' "'overt conduct'" may support a finding of the existence of a conspiracy. Poole v. Commonwealth, 7 Va. App. 510, 513, 375 S.E.2d 371, 372 (1988) (quoting United States v. Harris, 433 F.2d 333, 335 (4th Cir. 1970)).

"In order to establish the existence of a conspiracy, as opposed to mere aiding and abetting, the Commonwealth must prove 'the additional element of preconcert and connivance not necessarily inherent in the mere joint activity common to aiding and abetting.'" Zuniga v. Commonwealth, 7 Va. App. 523, 527, 375 S.E.2d 381, 384 (1988) (quoting United States v. Peterson, 524 F.2d 167, 174 (4th Cir. 1975)). While proof of the existence of an agreement is an essential element to establish the crime of conspiracy, see Fortune v. Commonwealth, 12 Va. App. 643, 647, 406 S.E.2d 47, 48 (1991), proof of an explicit agreement is not required, and the Commonwealth may, and frequently must, rely on circumstantial evidence to establish the conspiracy. Stevens v. Commonwealth, 14 Va. App. 238, 241, 415 S.E.2d 881, 883 (1992). When a conviction is based on circumstantial evidence, the evidence "'must be consistent with guilt and inconsistent with innocence and must exclude every reasonable hypothesis of innocence.'" Feigley, 16 Va. App. at 724, 432 S.E.2d at 525 (quoting Bishop v. Commonwealth, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984)).

At oral argument, appellant conceded that there was an agreement between appellant and Sprouse to safeguard the envelope. However, appellant denies that the agreement involved the distribution of drugs or that appellant knew the exact contents of the envelope. The only issue before us, then, is the nature and content of the agreement.

We find that the evidence, when viewed in the light most favorable to the Commonwealth, see Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975), indicates appellant knew the contents of the envelope and that she was safekeeping drugs and cash for Sprouse. Appellant accepted the envelope without asking any questions about what

- 4 -

Sprouse expected from her; Sprouse handed the envelope over to appellant without giving her any instructions. This mutual silence as to the handling of the envelope supports the reasonable conclusion that appellant already knew what she was expected to do, namely to keep the envelope safely in her possession for Sprouse. The trial court could infer from appellant's remarks that she would guard the envelope and its contents with her life that appellant knew the significance of her responsibility, as well as the significance and value of the items inside of the envelope.

The question then becomes whether the agreement between appellant and Sprouse included the distribution of methamphetamine. Taking all of the circumstances into account, we find sufficient evidence in the record for the trial court to have reasonably concluded that appellant knew Sprouse was intending to distribute the drugs and that appellant and Sprouse acted together to accomplish that purpose.

First, we find that the quantity of the drugs entrusted to appellant indicates that the drugs were not intended for personal use. By virtue of the inscription on the envelope, appellant knew that Sprouse entrusted her with two ounces of methamphetamine. Deputy Sholes testified that possession of that amount of methamphetamine was inconsistent with personal use. Hudak v. Commonwealth, 19 Va. App. 260, 263, 450 S.E.2d 769, 771 (1994) (holding that, in a prosecution for conspiracy to distribute drugs, expert testimony is necessary to show that drugs were not intended for personal use). We find that based upon this expert testimony, the trial court was able to reasonably conclude that appellant knew that Sprouse was intending to distribute the methamphetamine rather than to use it personally.

Second, the envelope contained both the methamphetamine and a substantial amount of cash, $3,500. The mere presence of drugs and a large amount of cash is indicative of a scheme to distribute drugs. Here, the scheme to distribute drugs to another person was even more

explicit. The inscription on the outside of the envelope detailed the quantity of the drugs, the amount of cash, and included a name and phone number of a third person. From the presence of the drugs, the large amount of cash and the third party's contact information, the trial court could reasonably infer that appellant knew Sprouse intended to transfer the drugs and the cash to another person. Appellant did not need to know whether that third person was a buyer or a seller of drugs; it is enough that she was aware that the drugs and cash were "in transit" to another person and that Sprouse was in the business of exchanging drugs for money.

> "Where it is shown that the defendants by their acts pursued the same object, one performing one part and the other performing another part so as to complete it or with a view to its attainment, the jury will be justified in concluding that they were engaged in a conspiracy to effect that object." 16 Am. Jur. 2d Conspiracy § 42 (1979). . . . "[L]iability as a conspirator is not dependent on knowledge of the entire scope of the conspiracy. Knowledge need not extend to all the details of the conspiracy, the identity of the other conspirators, the part each member of the conspiracy is to play, or how the spoils of the conspiracy are to be divided." 16 Am. Jur. 2d Conspiracy § 14 (1979)

Amato v. Commonwealth, 3 Va. App. 544, 552, 352 S.E.2d 4, 9 (1987) (other citation omitted).

Third, appellant's silence when she accepted the envelope, and Sprouse's silence when she handed the envelope to appellant, signifies a prior agreement between the two with regard to the envelope and its contents. It is reasonable to conclude that appellant and Sprouse had a prior agreement about appellant's role with regard to the envelope, and appellant knew exactly what was expected of her when she accepted the drugs and cash for safekeeping. From appellant's failure to inquire about the details of the transaction, and from appellant's statements that she would guard the contents of the envelope with her life, the trial court could reasonably infer that appellant knew that she was guarding the drugs and the cash as part of a larger and more significant plan that involved the exchange of drugs for money.

Finally, Sprouse packaged the drugs and cash in the envelope in front of appellant. Sprouse never tried to conceal the contents of the envelope in an effort to shield appellant from criminal liability or to prevent appellant from becoming a witness against Sprouse. From this, the trial court was entitled to conclude that appellant was already a willing participant in the criminal enterprise, was not a stranger to this transaction, and had previously been exposed to Sprouse's plan to sell the methamphetamine.

From all the circumstances, the trial court was entitled to conclude that the agreement between appellant and Sprouse contemplated the distribution of methamphetamine and that appellant's role in this enterprise was to hold the drugs for safekeeping while Sprouse sold the drugs in smaller quantities. This duty to Sprouse gave appellant a stake in the ongoing criminal enterprise of distribution of methamphetamine. Appellant acknowledged the significance of her responsibility by offering to guard the envelope with her life. Accordingly, we find that it was reasonable for the trial court to conclude, under the facts of this case, that appellant and Sprouse acted with a mutual understanding as to the unlawful distribution of methamphetamine and that they cooperated and acted together in the accomplishment of that purpose.

The judgment of the trial court is affirmed.

<u>Affirmed.</u>