COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, O'Brien and Athey
Argued at Fredericksburg, Virginia


EVERETT WILLIAM SCHWARTZ

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1032-22-4              JUDGE MARY GRACE O'BRIEN
                                                              JUNE 20, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF WARREN COUNTY
William W. Sharp, Judge

Aaron M. Burgin (Aaron M. Burgin, Attorney at Law, PLLC, on
brief), for appellant.

Leanna C. Minix, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Everett William Schwartz (appellant) was convicted of conspiracy to possess a Schedule I or

II controlled substance with the intent to distribute and sentenced to ten years' incarceration with six

years suspended.  Appellant challenges the sufficiency of the evidence for his conviction.  Finding

no error, we affirm the court's judgment.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party

in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  In doing so, we "discard the evidence of the

accused in conflict with that of the Commonwealth, and regard as true all the credible evidence

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Tara Taylor was a confidential informant for the Northwest Regional Drug Task Force. In March 2021, appellant, using a pseudonym, asked Taylor if she could connect him with people in Front Royal to whom he could sell drugs. Appellant stressed that "dollars [was] the mission" because he needed "ten G's for a lawyer."

Taylor reported her conversations with appellant to Investigator Kevin Coffman, a member of the task force. Investigator Coffman told Taylor to see if appellant would sell him $1,500 of fentanyl. Taylor relayed messages between Investigator Coffman and appellant regarding the potential sale of several drugs, including methamphetamine and fentanyl, in various quantities. When they could not agree on a price, Taylor gave appellant Investigator Coffman's phone number so they could talk directly. Investigator Coffman, posing as a drug buyer, spoke with appellant by phone and agreed to buy 200 capsules of "scramble," a mixture of heroin and other substances.

Investigator Coffman, Taylor, and appellant agreed to meet at a McDonald's parking lot in Front Royal on March 11, 2021, around 8:00 p.m. for the exchange. Taylor told Investigator Coffman that appellant would arrive in a dark-colored sedan with tinted windows and Maryland license plates. The task force, which included Investigators Michael Upham and Justin Schumer and Detective Brian Derryberry, planned to purchase the narcotics from appellant before arresting him. Shortly before the meeting, however, Taylor informed Investigator Coffman that two other individuals would be with appellant. Concerned that appellant might be planning a robbery, the task force officers decided to arrest appellant immediately upon identifying him. Investigator Coffman and Taylor waited at a nearby restaurant while the rest of the task force conducted surveillance.

Officers with the task force saw three individuals in a black sedan with Maryland license plates arrive at a gas station near the McDonald's. The task force officers identified one of the

passengers as appellant. Detective Derryberry drove his police van into the gas station parking lot with its emergency lights on and parked near the front of the sedan. Appellant was in the front passenger seat; an unidentified individual was in the driver's seat, and the other unidentified passenger was in the back seat. Investigator Upham exited the police van's passenger side, identified himself as a law enforcement officer, and commanded the sedan's occupants to get out. Instead, the driver accelerated, striking Investigator Upham and propelling him onto the sedan's windshield. Other officers shot at the sedan as it continued approximately 100 feet through the parking lot before Investigator Upham was "thrown off of the vehicle." The sedan turned around and sped through the parking lot again before crashing into an embankment.

The "rear window to the [sedan] was gone," and Detective Derryberry saw the driver "pass something . . . to the backseat passenger" that "[c]ould . . . have been drugs." Investigator Schumer also saw the back seat passenger moving around and "throwing stuff out of his pants and putting stuff into his pants."

Officers removed the driver and back seat passenger from the sedan and arrested them. Appellant initially refused to comply with the officers' commands to exit, but eventually got out with his hands raised. Before police could handcuff him, "he threw [his] cell phone on the ground as if it was a football he was trying to spike."

Appellant was taken to the hospital, where he told Investigator Coffman that after the police "moved in," his companions spoke of a "bundle of drugs," and one of them passed "a plastic bag of drugs" to the other.

Officers searched the sedan shortly after the incident but did not find any contraband. After impounding the sedan, police received a tip from a confidential informant incarcerated with one of appellant's companions that the drugs were in the fabric lining of the interior roof. They searched the sedan again and found three plastic baggies containing 150 capsules in the roof lining. One bag

was near the driver seat; two were in the back passenger side of the liner. A forensic analysis determined that the capsules contained a total of 75.09 grams of a powder composed of fentanyl and other controlled substances.

After the close of the evidence and argument, the court convicted appellant of conspiracy to possess a Schedule I or II controlled substance with the intent to distribute. The court found that there was "substantial evidence beyond a reasonable doubt that [appellant] was negotiating a drug deal, that he was there to participate in a drug deal and perhaps the other two in the vehicle were too. That is not the issue today." The court, however, also found that "there [was] plenty of circumstantial evidence of the joint participation to some degree of the other two. He only needs one other, really, for a conspiracy but both of the other two because they were seen to be making a lot of furtive gestures trying to hide things." The court noted that "[o]ne drove the vehicle and attempted to flee from the police on top of that." Accordingly, the court concluded that the "totality of the evidence" demonstrated "a conspiracy to transact" and it did not "matter which one of the three was the one who actually possessed the drugs."[1] This appeal followed.

## ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have

---

[1] The court granted appellant's motion to strike a charge for possession of a Schedule I or II controlled substance.

- 4 -

found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Lucas v. Commonwealth*, 75 Va. App. 334, 342 (2022) (quoting *McGowan*, 72 Va. App. at 521).

Appellant argues that the evidence was insufficient to sustain his conspiracy conviction under *Fortune v. Commonwealth*, 12 Va. App. 643, 648 (1991), because he could not enter into a conspiratorial agreement with Investigator Coffman or Taylor as a matter of law. Appellant further argues that the evidence failed to prove any agreement between him and the other passengers in the sedan.[2] He contends that there was no direct evidence of such an agreement and the circumstantial evidence failed to exclude his hypothesis that one of the men was "providing transportation" and the

---

[2] As a threshold matter, appellant contends that this Court cannot consider whether a conspiracy existed between him and the other passengers in the sedan because the Commonwealth did not present that argument at trial. As appellee, however, the Commonwealth may defend the trial court's judgment on any ground, regardless of "'whether . . . that ground was relied upon, rejected, or even considered by the [trial court],'" as long as "the record on appeal supports the appellee's argument." *Spinner v. Commonwealth*, 297 Va. 384, 391 (2019) (second alteration in original) (quoting *Perry v. Commonwealth*, 280 Va. 572, 581 (2010)).

Appellant further argues that the trial court did not make a "factual finding as to an alternative basis for conviction" and points to the court's statement that whether the other two passengers were "there to participate in a drug deal" was "not the issue today." "We do not, however, view a trial judge's statements from the bench in isolation." *Suffolk City Sch. Bd. v. Wahlstrom*, ___ Va. ___, ___ (Apr. 27, 2023); *see also Warren v. Commonwealth*, 76 Va. App. 788, 800-01 (2023) ("[W]e will not 'fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied.'" (quoting *Groves v. Commonwealth*, 50 Va. App. 57, 62 (2007))). A review of the record in its entirety demonstrates that the trial court considered, and found sufficient evidence of, a conspiracy between appellant and the other two passengers. Moreover, "an appellate court's 'examination is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling.'" *Perry*, 280 Va. at 580 (quoting *Bolden v. Commonwealth*, 275 Va. 144, 147 (2008)).

other was "coming down for [a] party." Additionally, appellant theorizes that the driver attempted to elude the police because he may have had warrants or possessed unrelated contraband.

"A conspiracy is 'an agreement between two or more persons by some concerted action to commit an offense.'" *Richard v. Commonwealth*, 72 Va. App. 598, 610 (2020) (quoting *Zuniga v. Commonwealth*, 7 Va. App. 523, 527 (1988)), *rev'd on other grounds*, 300 Va. 382 (2021). The conspiracy offense "is complete when the parties form the agreement to commit the offense, 'regardless of whether any overt act in furtherance of commission of the substantive offense is committed.'" *Id.* (quoting *Johnson v. Commonwealth*, 8 Va. App. 34, 38 (1989)). "Proof of an explicit agreement," however, "is not required, and the Commonwealth may, and frequently must, rely on circumstantial evidence to establish the conspiracy." *Combs v. Commonwealth*, 30 Va. App. 778, 787 (1999) (citing *Stevens v. Commonwealth*, 14 Va. App. 238, 241 (1992)). "It is a rare case where any 'formal agreement among alleged conspirators' can be established." *James v. Commonwealth*, 53 Va. App. 671, 678 (2009) (quoting *Wilder Enter. v. Allied Artists Pictures Corp.*, 632 F.2d 1135, 1141 (4th Cir. 1980)).

Accordingly, the fact finder may infer a conspiracy "from the overt actions of the parties, and a common purpose and plan may be inferred from a development and collocation of circumstances." *Combs*, 30 Va. App. at 787 (quoting *McQuinn v. Commonwealth*, 19 Va. App. 418, 425 (1994)). Whether a conspirator's "conduct constituted knowing participation in the scheme or merely inadvertence" is a factual question. *Floyd v. Commonwealth*, 219 Va. 575, 581 (1978) (quoting *United States v. Harris*, 433 F.2d 333, 335 (4th Cir. 1970)). Thus,

> when two or more persons "by their acts pursued the same object, one performing one part and the others performing another part so as to complete it or with a view to its attainment, the [fact finder] will be justified in concluding that they were engaged in a conspiracy to effect that object."

*Richard*, 72 Va. App. at 610 (quoting *Charity v. Commonwealth*, 49 Va. App. 581, 586 (2007)).

- 6 -

Although it was a legal impossibility for appellant to conspire with Investigator Coffman or Taylor to distribute controlled substances, *Fortune*, 12 Va. App. at 648, a rational trier of fact could have found that appellant and his companions drove from Maryland with a large quantity of fentanyl capsules intending to sell them to Taylor and Investigator Coffman.

The driver's aggressive effort to escape when the officers attempted to arrest the group permitted the court to infer that the driver knew of the fentanyl's presence and was there to further, promote, and cooperate in appellant's illegal venture. *See Murray v. Commonwealth*, 71 Va. App. 449, 461 (2020) (holding that a defendant's flight from the scene evidenced "consciousness of . . . guilt" (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000))). Appellant's bare speculation that the driver may have eluded because he had outstanding warrants or possessed additional contraband is not supported by any evidence in the record. The Commonwealth "need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Taylor v. Commonwealth*, 61 Va. App. 13, 30 (2012) (quoting *Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993)). In addition, when flight may be "attributable to several causes, 'consciousness of guilt' could be inferred by the trial court if any one of those causes was the instant offense." *Ricks v. Commonwealth*, 39 Va. App. 330, 336-37 (2002) (holding that "[w]hile appellant argues his flight could have been the result of the outstanding warrants or his possession of marijuana, these potential multiple causes for the flight do not obviate the 'consciousness of guilt' nexus" with the present offense).

The court also reasonably inferred that appellant's companions knew of and were participating in appellant's illegal venture based on their discussions and furtive movements in the sedan after the police arrived. Detective Derryberry saw the driver pass an object to the back seat passenger, and Investigator Schumer saw the back seat passenger making furtive movements. Those observations corroborated appellant's statements to Investigator Coffman that his

companions spoke of a "bundle of drugs" after the police arrived, and one of them passed "a plastic bag of drugs" to the other. In addition, the information police received from a confidential informant inside the jail demonstrated that one of appellant's companions knew the drugs were hidden in the interior roof liner.

The totality of this evidence, viewed in the light most favorable to the Commonwealth, is sufficient for a rational trier of fact to conclude that appellant's companions knew that the contraband was hidden in the sedan and were engaged in a conspiracy with appellant to sell it. The Commonwealth's evidence was competent, not inherently incredible, and sufficient to sustain appellant's conviction.

## CONCLUSION

For the foregoing reasons, the court's judgment is affirmed.

*Affirmed.*